IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERRANCE ADAMS, #229165, ) | Civil Action No. 3:12-1482-JFA-JRM |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ROBERT M. STEVENSON, III, ) | |
| Warden Broad River Corr. Inst., ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Terrance Adams ("Adams") is an inmate with the South Carolina Department of Corrections serving a sentence of life imprisonment without the possibility of parole ("LWOP") under the South Carolina recidivist statute (S.C.Code Ann. § 17-25-45) for six counts of burglary in the first degree with concurrent sentences for possession of burglary tools, resisting arrest, and petit larceny. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 1, 2012.[1] Respondent filed a return and motion for summary judgment on September 25, 2012. Because Adams is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on September 26, 2012 explaining to him his responsibility to respond to the motion for summary judgment. Adams filed responses to Respondent's motion on January 2, 1013 and May 6, 2013, respectively.

---

[1]Filing date under Houston v. Lack, 487 U.S. 266 (1988).

**Background and Procedural History**

The charges against Adams resulted from a string of burglaries which occurred at an apartment complex in Richland County on April 19, 2005. Adams was arrested near the scene of the robberies with property taken from the victims and burglary tools. Adams did not testify at trial. Upon conviction, Adams was sentenced to LWOP based on prior convictions for burglary. Adams was represented by Lauren Mobley, Esquire, and Tivis Sutherland, Esquire.

An Anders[2] brief was filed on Adams' behalf by the South Carolina Commission on Indigent Defense raising the following issue:

> Did the lower court erred[sic] by denying appellant's motion to suppress the evidence as the product of an unlawful search and seizure?

Pursuant to State procedure, Adams was notified that he had the right to file a *pro se* brief. He attempted to file a "Final *Pro Se* Brief of Appellant," but it was untimely. By letter of August 4, 2008, the South Carolina Court of Appeals returned the *pro se* brief to Adams advising him that it was untimely. The *pro se* brief was not considered by the Court of Appeals. Adams' conviction was affirmed. *See* State v. Adams, Unpub.Op.No. 2008-UP-435 (filed August 5, 2008). The Remittitur was returned on August 22, 2008.

Adams filed an application for post-conviction relief on October 29, 2008. (App. 317). Charles T. Brooks, III, Esquire, was appointed to represent Adams, and an amended PCR was filed. (App. 359). An evidentiary hearing was held on November 5, 2009, at which Adams and one of his trial attorneys (Sutherland) testified. (App. 444). The PCR court filed an order of dismissal on April 19, 2010. (App. 492).

---

[2] Anders v. California, 386 U.S. 738 (1967).

2

A <u>Johnson</u>[3] petition for writ of certiorari was filed in the South Carolina Supreme Court on Adams' behalf by the South Carolina Commission on Indigent Defense raising the following issue:

Trial counsel erred in dissuading petitioner from testifying in his defense at trial.

The South Carolina Supreme Court notified Adams of his right to file a *pro se* brief by letter dated November 22, 2010. Adams filed multiple *pro se* responses, but they were all untimely. *See* letter of August 23, 2011 from the South Carolina Supreme Court. By order of September 22, 2011, Adams' petition for a writ of certiorari was denied, and the Supreme Court returned the Remittitur on October 10, 2011.

On April 23, 2012, Adams filed a second PCR. A conditional order of dismissal was filed on May 2, 2012, finding that the second PCR was untimely and successive pursuant to S.C. Code Ann.§ 17-27-45(a). A final order of dismissal was filed on August 1, 2012. Apparently, Adams attempted to file an appeal, but the South Carolina Supreme Court wrote him on August 21, 2012, informing him that since his second PCR had been dismissed for being untimely and successive, Rule 243(c), SCACR required him to provide a written explanation as to why the determination was improper. According to Respondent, the appeal was dismissed by the South Carolina Supreme Court on September 4, 2012. The record contains a "*Pro Se* Petition for Writ of Certiorari" dated September 5, 2012, which does not comply with the Supreme Court's letter.

**Grounds for Relief**

In his original Petition in this Court, Adams asserts that he is entitled to a writ of habeas corpus on the following grounds:

---

[3]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988).

3

**GROUND ONE:** Did the lower court err by denying petitioner's motion to suppress the evidence as the product of an unlawful search and seizure?

> SUPPORTING FACTS: Petitioner contends that the absence of specific and articuable facts, absence of probable cause, the police must not over step the constitutional line of reasonable to unreasonable seizure. This compel the petitioner to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment; and compel him in a criminal case to be a witness against himself, which is condemned in the Fifth Amendment.

**GROUND TWO:** Trial counsel erred in dissuading petitioner from testifying in his defense at trial.

> SUPPORTING FACTS: As a rule, the right to testify or not is in the hands of the defendant. A criminal defendant has a right to testify in their own behalf per the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment.

In an Amended Petition, Adams asserts the following grounds:

**GROUND TWO:**  Ineffective Assistance of Trial Counsel, Strickland v. Washington, 466 U.S. 668 (1984) & Ineffective Assistance of Appellate Counsel, Lucy v. Evitts, 469 U.S. 396 (1985).

> SUPPORTING FACTS: (A) Counsel erred in dissuading Petitioner from testifying in his defense during trial; Rock v. Arkansas, 483 U.S. 44 (1987).
>
> (B) Appellate Counsel was ineffective for failing to sufficiently argue a Fourth Amendment violation, Lucy v. Evitts, 469 U.S. 387 (1985).
>
> (C) Appellate Counsel was ineffective for failing to argue the Directed Verdict issues on appeal, Evitts v. Lucy, 469 U.S. 387 (1985).
>
> (D) Appellate Counsel was ineffective for not raising the grounds of the Prosecutor's improper comments during closing summation, Evitts v. Lucy, 469 U.S. 387 (1985).
>
> (E) Counsel was ineffective for failing to argue the State's evidence produced at trial was a fatal variance within the allegations in the indictment, Russell v. U.S., 369 U.S. 749 (1962).

> (F) Trial counsel was ineffective for not objecting to the in-court identification as being tainted and unreliable, <u>Neil v. Biggers</u>, 409 U.S. 188 (1972).
>
> (H). The State Prosecutor committed prosecutorial misconduct in contravention of <u>Donnelly v. DeChristofor[o]</u>, 416 U.S. 637 (1974).

**GROUND THREE:** Petitioner was denied a fair trial as guaranteed the Fifth and Fourteenth Amendments to the U.S. Constitution that resulted in an unconstitutional life sentence without parole.

> SUPPORTING FACTS: Petitioner was charged with multiple counts of burglary and asserts that because of trial counsel's ineffectiveness a miscarriage of justice occurred, that all the elements of the crime must be proven beyond a reasonable doubt. The trial court record reflects that the State failed to prove each and every element beyond a reasonable doubt, i.e. "that Petitioner broke into or entered into a dwelling in the day/night of any particular dwelling."

**GROUND FOUR:** The Trial court lacked subject matter jurisdiction to accept a nolle prossed indictment used to enhance a second degree burglary to a 1st degree where the evidence adduced reveals the burglarie(s) are second degree's not first degree, and further the nolle prossed indictment the State used for enhancement resulted in a sentence that is cruel and unusual punishment.

## Discussion

### A.  Procedural Bar

Respondent asserts that a number of Adams' claims are procedurally barred because they were not properly presented to the South Carolina appellate courts.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.     Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 203; Blakeley v. Rabon, 221 S.E.2d 767 (S.C. 1976). The second avenue is by filing an application for post-conviction relief ("PCR"). *See* S.C. Code Ann. § 17-27-10 *et seq.* A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application. *See* S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 215 S.E.2d 883 (S.C. 1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 653 S.E.2d 266 (S.C. 2007). In Bostic v. Stevenson, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in Marlar, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to Marlar (i.e.,

November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  *See* Rose v. Lundy, *supra*.

### 2.     Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice resulting from the alleged constitutional violation."

Smith v. Murray, 477 U.S. at 533, quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)) *overruled on other grounds by* United States v. Barnette, 644 F. 3d 192 (4th Cir. 2011); Teague v. Lane, 489 U.S. 288, 297-98 (1989).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750; Gray v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. at 488). A petitioner may establish cause

if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier, 477 U.S. at 488-490; Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *id.*, or his sentence. Matthews v. Evatt, 105 F.3d at 916.

**5.     Procedure**

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The only issues that were properly presented to the South Carolina appellate courts were those presented in the Anders brief and Johnson petition, i.e., denial of motion to suppress evidence resulting from warrantless search, and trial counsel dissuaded Adams from testifying at trial. The South Carolina appellate courts rejected Adams' *pro se* briefs on direct appeal and on collateral review as untimely. Therefore, all issues Adams attempted to raise in those filings are procedurally barred. Likewise, the South Carolina Supreme Court applied a bar to Adams' second PCR since it violated South Carolina procedural rules.

**B. Suppression**

In the first ground in his original petition, Adams argues that the trial court erred in denying his motion to suppress. The record shows that counsel made a pretrial motion to suppress, a hearing was held, and the trial court denied the motion. Further, this issue was raised in the Anders brief on direct appeal.

Stone v. Powell, 428 U.S. 465, 482 (1976) precludes a federal court from granting habeas relief on an alleged Fourth Amendment violation if "the State has provided an opportunity for full and fair litigation" of the claim. Shortly after Stone was decided the Fourth Circuit stated the appropriate framework for the District Courts to employ when considering a Fourth Amendment claim in a § 2254 petition:

> "[A] district court ..., should, under the rule in Stone v. Powell, *supra*, first inquire as to whether or not the petitioner was afforded an Opportunity to raise his Fourth Amendment claims under the then existing state practice.
>
> * * *
>
> Second, ... when the district court has made the "opportunity" inquiry, it need not inquire further into the merits of petitioner's case, when applying Stone v. Powell, *supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."

Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir.1978); *see also* Mueller v. Angelone, 181 F.3d 557, 570 n. 8 (4th Cir.1999).

While "Stone v. Powell, *supra*, marked for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas petitions where the petitioner had an opportunity to litigate those claims in state court," Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir.1982), claims of ineffective assistance of counsel in litigating those claims in state court may be raised and are cognizable in the § 2254 petition. Kimmelman v. Morrison, 477 U.S. 365, 382–383 (1986).

The record shows that Adams had a full and fair opportunity to raise his Fourth Amendment claims in state court. His motion to suppress was denied after a hearing, and he was given appellate review of the decision.

### C. Ineffective Assistance of Counsel

In the second ground of the amended petition, Adams asserts that his trial attorney, Ms. Mobley, was ineffective because she advised him not to testify in his own defense. This issue was raised in the Johnson petition.

Adams raised several claims of ineffective assistance of trial counsel in his initial and amended PCRs but this claim was not included. Nor did Adams testify about this claim on direct

13

examination during the evidentiary hearing. It was only on cross-examination that Adams complained that Ms. Mobley advised him not to testify. (App. 446-468). Ms. Mobley did not testify at the evidentiary hearing, and co-counsel, Mr. Sutherland, was not asked about it. The trial transcript reflects the following colloquy between Ms. Mobley and the court after the State rested its case:

> **Ms. Mobley:** Your Honor, I believe we would just request to rest on the record. I've discussed with my client about whether or not he wish[es] to testify. I don't know if Your Honor wishes to have a colloquy with him about that.
>
> **The Court:** I don't think I'm required to unless he does decide to testify, and then I want to be sure that he understands that he could not be compelled to. If he's exercising his right, then obviously he understands his right.
>
> **Ms. Mobley:** Yes, Your Honor.
>
> **The Court:** And, of course, I will instruct the jury that they cannot discuss that, cannot hold that against him, or anything like that.
>
> **Ms. Mobley:** Yes, Sir. Thank you, Your Honor. I don't believe he wishes to testify.
>
> **The Court:** All right. That will close the record in the trial; is that correct?
>
> **Ms. Mobley:** Yes, Sir.
>
> (App. 250-251).

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment protect a defendant's right to present evidence in his defense. A logical inference from these protections is the defendant's right to testify in his own behalf if he decides it is in his best interest to do so. Rock v. Arkansas, 483 U.S. 44 (1987). A defendant must be aware

of his right to testify in order to waive it, but there is no requirement that the court advise a defendant of his right to testify and secure a waiver on the record. United States v. McMeans, 927 F.2d 162 (4th Cir. 1991). "[T]trial counsel...has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not." Sexton v. French, 163 F.3d 874, 882 (1998). The issue is subject to a Strickland analysis.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . [t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

\* \* \*

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 690, 694.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362, 391 (2000) ("Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims....").

From the colloquy quoted above which was made in Adams' presence, it is clear that Ms. Mobley had told him of his right and he had decided not to testify. This conclusion is supported by Adams' PCR testimony. He testified that Ms. Mobley advised him not to testify "because [if he did] they [the State] were going to use my past [record] against me." (App. 466). He also testified that he agreed with his attorney's advice. (App. 467-468).

Adams has not shown that Ms. Mobley was ineffective.

**Conclusion**

Based on a review of the record, it is recommended that Respondent's motion for summary

16

judgment be **granted**, and the petition be **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

July 30, 2013

**The parties are referred to the Notice Page attached hereto.**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).